1

2

3                                                    O

4

5

6

7

8              UNITED STATES DISTRICT COURT

9            CENTRAL DISTRICT OF CALIFORNIA

10

11  COLORADO CASUALTY          )   Case No. EDCV 09-02123
    INSURANCE COMPANY, A       )   VAP(DTBx)
12  COLORADO CORPORATION,      )
                               )   **[Motions filed on February**
13                Plaintiff,   )   **12, 2010]**
                               )
14      v.                     )   **ORDER DENYING DEFENDANTS'**
                               )   **MOTION TO TRANSFER AND**
15  CANDELARIA CORPORATION,    )   **GRANTING PLAINTIFF'S MOTION**
    et al.,                    )   **FOR SUMMARY JUDGMENT**
16                             )
                  Defendants.  )
17  _____)

18      Plaintiff Colorado Casualty Insurance Company

19  ("Plaintiff") filed this action seeking a judicial

20  declaration that it is not obligated to indemnify its

21  insureds, Defendants Candelaria Corporation, EPC

22  Corporation (the "Candelaria Defendants"), and David N.

23  Goff,[1] for any punitive damages that may be awarded to

24  Defendants Somlux Lebsack and John Lebsack ("Lebsacks"

25  _____

26      [1]On February 9, 2010, Plaintiff filed a Notice of
    Non-Appearance and Non-Participation of Defendant David
27  N. Goff, in which Plaintiff represented that it had been
    informed that Mr. Goff does not intend to participate in
28  this action and agrees to be bound by any judgment
    entered.  Plaintiff attached a letter it received from
    Mr. Goff's counsel to this effect.

and, together with Goff and the Candelaria Defendants,
"Defendants") in an action currently pending in
California Superior Court, Riverside County.  The
Candelaria Defendants moved to transfer this case to the
District of Arizona, and Plaintiff moved for summary
judgment.  These motions came before the Court for a
hearing on March 22, 2010.  After reviewing and
considering all papers filed in support of, and in
opposition to, the motions, the Court DENIES the
Candelaria Defendants' motion to transfer and GRANTS
Plaintiff's motion for summary judgment.

## I. BACKGROUND

**A.   Procedural History**

Plaintiff filed this action on November 13, 2009.
Plaintiff seeks a judicial declaration that it has no
duty to indemnify the Candelaria Defendants or Mr. Goff
for any punitive damage award that may be entered against
them in the case entitled Lebsack, et al. v. Goff, et
al., Case No. RIC472471, pending in the California
Superior Court for Riverside County (the "Underlying
Action").  Plaintiff also seeks a declaration that it has
no duty to pay to the Lebsacks any punitive damages they
may be awarded in the Underlying Action.

On February 12, 2010, Plaintiff filed a motion for summary judgment on both claims, and noticed a hearing on the summary judgment motion for March 15, 2010.  The Candelaria Defendants filed an <u>ex parte</u> application seeking to continue the hearing date to May 3, 2010, which the Court granted in part, continuing the hearing until March 22, 2010.  The Lebsacks' and Candelaria Defendants' Oppositions were filed timely, as was Plaintiff's Reply.

Also on February 12, 2010, the Candelaria Defendants filed a motion to transfer this action to the United States District Court for the District of Arizona. Plaintiff's Opposition and the Candelaria Defendants' Reply were filed timely.

Both the motion to transfer and the motion for summary judgment The Court now considers both the motion to transfer and the motion for summary judgment.

**B.   Uncontroverted Facts**

The following material facts are supported adequately by admissible evidence and are uncontroverted.  They are "admitted to exist without controversy" for the purposes of this Motion.  <u>See</u> Local Rule 56-3.

1    Defendants Candelaria Corporation ("Candelaria") and
2  EPC Corporation ("EPC") are Arizona corporations with
3  their principal places of business in Glendale, Arizona.
4  (Candelaria Defs.' Stmt. of Genuine Issues ("SGI") at
5  6:9-12; Pl.'s Reply to Candelaria Defs.' SGI ¶ 1.)  Mr.
6  Goff, a resident of Tucson, Arizona, worked as a
7  construction superintendent for Candelaria.  (Candelaria
8  Defs.' SGI at 6:16-19; Pl.'s Reply to Candelaria Defs.'
9  SGI ¶ 2.)  Candelaria provided Mr. Goff with a company
10 vehicle.  (Id.)

11

12    Plaintiff's home office is in Centennial, Colorado,
13 and it is authorized to do business as an insurer in
14 Arizona.  (Candelaria Defs.' SGI at 8:10-13; Pl.'s Reply
15 to Candelaria Defs.' SGI ¶ 8.)

16

17    The Candelaria Defendants purchased business
18 insurance from Plaintiff in the form of a "Commercial
19 Package Policy" and a policy of umbrella coverage,
20 (collectively, the "Policy"), which were in effect from
21 May 2006 to May 2007.[2]  (Pl.'s Stmt. of Uncontroverted
22 Facts ("SUF") ¶ 6; Candelaria Defs.' SGI at 3:24-4:4;
23 Lebsacks' SGI at 3:15-20.)  The Candelaria Defendants
24 obtained the Policy by working with an Arizona insurance
25 agency known as Sun Insurance Group.  (Candelaria Defs.'

26 _____

27    [2]The parties dispute whether the Policy period began
   on May 28, 2007 or May 29, 2007.  This dispute is
28 immaterial to resolution of these motions.

SGI at 7:18-21; Pl.'s Reply to Candelaria Defs.' SGI ¶ 6.)  The company vehicle provided to Mr. Goff was covered under the Policy.  (Pl.'s SUF ¶ 7; Candelaria Defs.' SGI at 4:5-8; Lebsacks' SGI at 3:21-24.)

Mr. Goff began working on a construction project for Candelaria in San Pedro, California in November, 2006.  (Candelaria Defs.' SGI at 10:18-20; Pl.'s Reply to Candelaria Defs.' ¶ 18-20.)  In January 2007,[3] Mr. Goff was involved in an automobile accident while driving the Candelaria-provided vehicle in Banning, California.  (Candelaria Defs.' SGI at 11:10-13; Pl.'s Reply to Candelaria Defs' SGI ¶ 22.)  Defendant Somlux Lebsack was driving the other vehicle involved in that accident.  (Candelaria Defs.' SGI at 11:14-18; Pl.'s Reply to Candelaria Defs' SGI ¶ 23.)  Ms. Lebsack later filed the Underlying Action against Mr. Goff, Candelaria and EPC in connection with that accident.  (Id.)  Ms. Lebsack seeks, inter alia, punitive damages in the Underlying Action.  The Candelaria Defendants tendered defense of the Underlying Action to Plaintiff.  (Pl.'s SUF ¶ 10; Candelaria Defs.' SGI at 5:11-13.)

_____

[3]The parties dispute whether the accident occurred on January 26 or 27.  This dispute is immaterial to the resolution of these motions.

# II. LEGAL STANDARD

## A.   Motion to Transfer

A district court, "for the convenience of parties and witnesses, in the interest of justice, . . . may transfer any civil action to any other district or division where it might have been brought."  28 U.S.C. § 1404(a).   In determining whether a transfer of venue is appropriate in a given case, courts may consider: "(1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum, (4) the respective parties' contacts with the forum, (5) the contacts relating to plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two fora, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof."  Jones v. GNC Franchising, Inc., 211 F.3d 495, 498–99 (9th Cir. 2000).  Courts also consider as significant factors the presence of a forum selection clause and the public policy of the forum state, if any. Id. at 499.  "The defendant must make a strong showing of inconvenience to warrant upsetting the plaintiff's choice of forum."  Decker Coal Co. v. Commonwealth Edison Co., 805 F.2d 834, 843 (9th Cir. 1986).

**B.   Motion for Summary Judgment**

A motion for summary judgment shall be granted when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).   The moving party must show that "under the governing law, there can be but one reasonable conclusion as to the verdict." Anderson, 477 U.S. at 250.

Generally, the burden is on the moving party to demonstrate that it is entitled to summary judgment. Margolis v. Ryan, 140 F.3d 850, 852 (9th Cir. 1998); Retail Clerks Union Local 648 v. Hub Pharmacy, Inc., 707 F.2d 1030, 1033 (9th Cir. 1983).   The moving party bears the initial burden of identifying the elements of the claim or defense and evidence that it believes demonstrates the absence of an issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

Where the non-moving party has the burden at trial, however, the moving party need not produce evidence negating or disproving every essential element of the non-moving party's case.   Celotex, 477 U.S. at 325. Instead, the moving party's burden is met by pointing out that there is an absence of evidence supporting the non-moving party's case.   Id.   The burden then shifts to the

non-moving party to show that there is a genuine issue of material fact that must be resolved at trial.  Fed. R. Civ. P. 56(e); <u>Celotex</u>, 477 U.S. at 324; <u>Anderson</u>, 477 U.S. at 256.  The non-moving party must make an affirmative showing on all matters placed in issue by the motion as to which it has the burden of proof at trial. <u>Celotex</u>, 477 U.S. at 322; <u>Anderson</u>, 477 U.S. at 252.  <u>See also</u> William W. Schwarzer, A. Wallace Tashima & James M. Wagstaffe, <u>Federal Civil Procedure Before Trial</u> § 14:144.

A genuine issue of material fact will exist "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." <u>Anderson</u>, 477 U.S. at 248.  In ruling on a motion for summary judgment, the Court construes the evidence in the light most favorable to the non-moving party. <u>Barlow v. Ground</u>, 943 F.2d 1132, 1135 (9th Cir. 1991); <u>T.W. Electrical Serv. Inc. v. Pacific Elec. Contractors Ass'n</u>, 809 F.2d 626, 630-31 (9th Cir. 1987).

## III. DISCUSSION

**A.   Motion to Transfer**

Plaintiff argues transfer is inappropriate because it could not have filed this action in the District of Arizona.  For the reasons discussed below, the Court agrees, and denies Defendants' motion to transfer.

1    In order for this action to be transferred to the
2  District of Arizona, the District of Arizona must have
3  had personal jurisdiction over all Defendants at the time
4  the action was filed.  See Hoffman v. Blaski, 363 U.S.
5  335, 344 (1960); Technograph Printed Circuits, Ltd. v.
6  Packard Bell Elecs. Corp., 290 F. Supp. 308, 326 (C.D.
7  Cal. 1968) ("[V]enue, i.e., 'where the action might have
8  been brought,' is to be determined as of the time of the
9  filing of the actions.").  Plaintiff bears the burden of
10 establishing that this action could have been brought
11 originally in the District of Arizona.

12

13   Here, Defendants have failed to meet their burden of
14 showing that this action might have been brought in the
15 District of Arizona.  The parties do not dispute that the
16 Lebsacks are citizens of California.  (Compl. ¶ 5;
17 Lebsacks' Ans. ¶ 5.)  Plaintiff does not identify any
18 connection between the Lebsacks and Arizona.
19 Accordingly, the Court has no basis to conclude that
20 either general or specific jurisdiction exists with
21 respect to the Lebsacks in the District of Arizona.  As
22 the District of Arizona lacked personal jurisdiction over
23 the Lebsacks at the time this action was filed, Plaintiff
24 could not have brought this action in Arizona.  Transfer
25 to Arizona under Section 1404 thus is inappropriate.

26

27

28

The Candelaria Defendants argue that because the Lebsacks now consent to personal jurisdiction in Arizona for the limited purpose of this action, transfer to the District of Arizona is appropriate.  (See Reply at 1:19-3:2.)  Under the Candelaria Defendants' theory, whether or not the District of Arizona had personal jurisdiction over the Lebsacks at the time this action was filed is mooted by their consent to personal jurisdiction there.  The Supreme Court has expressly rejected this very argument, however, holding that:

> If when a suit is commenced, plaintiff has a
> right to sue in that district, independently
> of the wishes of the defendant, it is a
> district "where the action might have been
> brought."  If he does not have that right,
> independently of the wishes of defendant, it
> is not a district "where it might have been
> brought," and it is immaterial that the
> defendant subsequently makes himself subject
> by consent, waiver of venue and personal
> jurisdiction defenses or otherwise, to the
> jurisdiction of some other forum.

Hoffman, 363 U.S. at 344 (quoting Blaski v. Hoffman, 260 F.2d 317, 321 (7th Cir. 1958) (emphasis added).

1    That the Lebsacks now consent to personal
2    jurisdiction in the District of Arizona is of no
3    relevance in determining whether it is a venue in which
4    this action "might have been brought."  As Defendants
5    have failed to meet their burden of showing Plaintiff
6    might have brought this action in the District of
7    Arizona, transfer is inappropriate.  It is unnecessary
8    for the Court to address the <u>GNC Franchising</u> factors.
9
10   **B.   Motion for Summary Judgment**
11   The Court notes that it is unusual for a party to
12   file a summary judgment motion at such a preliminary
13   stage in a case, when no scheduling conference has been
14   held and no discovery has been exchanged.  The material
15   facts of this case, however, are uncontroverted,[4] and no
16   party has indicated that any further discovery is
17   necessary in order to fully respond to the summary
18   judgment motion.  Accordingly, the Court considers the
19   motion for summary judgment.
20
21
22   ────────────
       [4]The Lebsacks argue that summary judgment is
23   inappropriate because "genuine issues of material fact
     exist as to whether California law determines whether the
24   policies provide coverage for punitive damages, whether
     plaintiff is under a duty to indemnify defendant Goff,
25   Candelaria and/or EPC for any punitive damages award
     against them in the underlying action and whether
26   plaintiff has a duty to pay to defendants Lebsack any
     award of punitive damages they may recover in the
27   underlying action."  (Lebsacks' Opp'n at 4:19-24.)  These
     are disputed issues of law, not fact, and do not preclude
28   summary judgment.

**1.  Ripeness**

As a preliminary matter, Defendants argue that because the Underlying Action has not yet been resolved, it is uncertain whether or not punitive damages ultimately will be awarded.  Defendants contend that under these circumstances, "Plaintiff is essentially asking the Court to issue an advisory ruling." (Candelaria Defs.' Opp'n at 16:22–24.)  The Court construes this as an argument that no actual case or controversy exists, and that the matter is not yet ripe.

This argument fails.  The Ninth Circuit has made clear that an insurer may bring a declaratory judgment action regarding its duty to defend and indemnify its insured in a pending state court suit even when the underlying litigation has not yet proceeded to judgment, and that such declaratory judgment actions are sufficiently ripe.  <u>Am. States Ins. Co. v. Kearns</u>, 15 F.3d 142, 144–45 (9th Cir. 1994).  Accordingly, the Court may hear this matter, and declines to dismiss the Complaint or stay any aspect of this action pending resolution of the Underlying Action.

**2.  Applicable Law**

The parties dispute whether California or Arizona law applies to the Policy.  Plaintiff argues that California law — which prohibits insurers from indemnifying their

insureds for punitive damage awards — applies, and that
Plaintiff thus cannot be held liable for any punitive
damage award in the Underlying Action.  Defendants, on
the other hand, argue that Arizona law — which permits
insurers to indemnify their insureds for punitive damage
awards — applies, and that Plaintiff thus may be held
liable for any punitive damage award in the Underlying
Action.

     In order to resolve this dispute, the Court must
perform a choice of law analysis.[5]  In so doing, the
Court applies California's choice of law rules.  See
Patton v. Cox, 276 F.3d 493, 495 (9th Cir. 2002) ("When a
federal court sits in diversity, it must look to the
forum state's choice of law rules to determine the
controlling substantive law.").  Defendants, as the
parties seeking to apply the law of a foreign state, bear
the burden of showing that Arizona law should apply.  See
Wash. Mut. Bank, FA v. Super. Ct., 24 Cal. 4th 906, 919
(2001).

---

[5]Though Plaintiff maintains that no choice of law
analysis is necessary because California law applies to
the Underlying Action, (see Summ. J. Mot. at 4:16-5:22),
it cites no authority that supports this proposition.

1

### a.   The Governmental Interest Analysis Is the

2

### Correct Choice of Law Analysis

3      The parties dispute whether the choice of law

4   analysis here is governed by California's "governmental

5   interest analysis" or by California Civil Code § 1646.

6   Under Section 1646, "[a] contract is to be interpreted

7   according to the law and usage of the place where it is

8   to be performed; or, if it does not indicate a place of

9   performance, according to the law and usage of the place

10   where it is made."  Defendants maintain that because this

11   dispute requires the Court to interpret the Policy,

12   Section 1646 applies.

13

14      The Court need not interpret Policy terms to resolve

15   this dispute here, however.  Rather, the Court is called

16   upon to determine whether, apart from the parties'

17   agreement in the Policy, California law prohibiting

18   insurers from compensating insureds for punitive damage

19   awards applies.  This is not a question of interpretation

20   of a contract, but application of a statute.

21   Accordingly, California's governmental interest analysis

22   is the proper framework to determine the choice of law

23   question.  See Frontier Oil Corp. v. RLI Ins. Co., 153

24   Cal. App. 4th 1436, 1460-61 (2007); Stonewall Surplus

25   Lines Ins. Co. v. Johnson Controls, Inc., 14 Cal. App.

26   4th 637 (1993).

27

28

1   The Candelaria Defendants argue that <u>Stonewall</u> is no
2   longer good law after <u>Frontier Oil</u>, and that <u>Frontier Oil</u>
3   requires that the Court apply California Civil Code §
4   1646. (Candelaria Defs.' Opp'n at 7:1–8:11.) This
5   argument fails. It ignores the <u>Frontier Oil</u> court's
6   express recognition that the <u>Stonewall</u> decision is "not
7   inconsistent with our conclusion that Civil Code section
8   1646 determines the law governing contract
9   interpretation." <u>Frontier Oil</u>, 153 Cal. App. 4th at
10  1460. The <u>Frontier Oil</u> court distinguished <u>Stonewall</u> on
11  the ground that "[t]he choice-of-law issue concerned the
12  existence of a right of indemnity for punitive damages
13  and <u>did not involve an issue of contract interpretation</u>."
14  <u>Id.</u> at 1461 (emphasis added).

16      **b.   California Law Governs This Dispute**
17      Under California law,

19      the governmental interest approach generally
20      involves three steps. First, the court
21      determines whether the relevant law of each
22      of the potentially affected jurisdictions
23      with regard to the particular issue in
24      question is the same or different. Second,
25      if there is a difference, the court examines
26      each jurisdiction's interest in the
27      application of its own law under the

28

1    circumstances of the particular case to
2    determine whether a true conflict exists.
3    Third, if the court finds that there is a
4    true conflict, it carefully evaluates and
5    compares the nature and strength of the
6    interest of each jurisdiction in the
7    application of its own law "to determine
8    which state's interest would be more
9    impaired if its policy were subordinated to
10   the policy of the other state" and then
11   ultimately applies "the law of the state
12   whose interest would be more impaired if its
13   law were not applied."

14

15   Kearney v. Salomon Smith Barney, Inc., 39 Cal. 4th 95,
16   107-08 (2006) (internal citations omitted). For the
17   reasons set forth below, the Court concludes that
18   California law governs this dispute.

19

20              **i.   California Law and Arizona Law Differ**
21        California law prohibits insurers from indemnifying
22   insureds for punitive damage awards.[6]   See PPG Inds.,

23   _____

24        [6]The Lebsacks argue that "California Insurance Code
     section 533 does not prohibit payment and indemnity for
25   willful acts arising out of an insured's vicarious
     liability."   (Lebsacks' Opp'n at 13:10-14.)   This
26   argument misses the point, however.   Although an employer
     may be held vicariously liable for compensatory damages
27   arising out of the willful acts of his employees, he
     cannot be held vicariously liable for punitive damages.
28                                        (continued...)

1   Inc. v. Transamerica Ins. Co., 20 Cal. 4th 310, 317

2   (1999); Cal. Ins. Code § 533.  Arizona law, by contrast,

3   permits insurers to indemnify insureds for such awards.

4   See Price v. Hartford Accident and Indemnity Co., 502

5   P.2d 522, 524-25 (Ariz. 1972).  Accordingly, California

6   and Arizona law are in conflict.

7

8       Plaintiff argues that there is no true conflict here

9   because ultimately the same result would obtain under

10  either California or Arizona law.  Although Arizona law

11  permits insurers to indemnify insureds for punitive

12  damages, it does not require them to do so.  Liability

13  for punitive damages may be excluded by the terms of an

14  insurance policy under Arizona law.  See Price, 502 P.2d

15  at 525.  Plaintiff contends that the terms of the policy

16  here exclude punitive damages from coverage, and thus

17  the result would be identical under either California or

18  Arizona law.

19

20      To support this conclusion, Plaintiff argues that

21  Arizona case law interpreting the relevant policy

22  language at issue here holds that such language excludes

23  coverage for punitive damages.  That policy language

24

25      [6](...continued)

26  Respondeat superior principles do not apply to punitive
    damages.  See White v. Ultramar, Inc., 21 Cal. 4th 563,

27  569 (1999).  In order to be held liable for punitive
    damages, an employer must have personally directed or

28  ratified the wrongful act.  Id.

requires Plaintiff to "pay all sums an 'insured' legally
must pay as damages because of 'bodily injury.'" (Pl.'s
SUF ¶ 8; Candelaria Defs.' SGI at 4:9-17; Lebsacks' SGI
at 4:2-8.)  Plaintiff argues punitive damages are
excluded from the scope of this language under State
Farm Mut. Auto. Ins. Co. v. Wilson, 782 P.2d 723 (Ariz.
Ct. App. 1989), which held that punitive damages were
outside the scope of coverage where the relevant policy
language required the insurer to "pay damages for bodily
injury."  Id. at 724.

This argument is flawed, however.  The State Farm
court itself recognized that "the term 'because of
bodily injury' arguably has a broader and more inclusive
meaning than the term 'for bodily injury.'"  Id. at 724.
The parties in State Farm, in fact, agreed that punitive
damages were included within the term "because of bodily
injury."  Id.  Under Arizona law, it appears that it is,
at a minimum, possible that punitive damages would be
covered by the term "because of bodily injury."

Thus, a conflict between California and Arizona law
exists, as California law would prohibit Plaintiff from
paying any punitive damage award against the Candelaria
Defendants, and Arizona law permits such a payment.  See
Stonewall, 14 Cal. App. 4th at 644-45.  The plain
language of the Policy does not foreclose the

1  possibility of liability for a punitive damages award

2  under Arizona law.

3

4              ii.  **The Interests of California and Arizona**

5                   **in Applying Their Respective Laws Are**

6                   **in Conflict**

7       California and Arizona have competing interests with

8  respect to application of their rules concerning

9  indemnification of punitive damages.  The California

10 Supreme Court has expressed the interest of the

11 California government in prohibiting indemnification as

12 follows:

13

14       "[T]he purposes of punitive damages[] in

15       California . . . are to punish the defendant

16       and to deter future misconduct by making an

17       example of the defendant.  If we were to

18       allow the intentional wrongdoer . . . to

19       shift responsibility for its morally

20       culpable behavior to the insurance company,

21       which surely will pass [on] to the public

22       its higher cost of doing business, we would

23       defeat the public policies of punishing the

24       intentional wrongdoer for its own outrageous

25       conduct and deterring it and others from

26       engaging in such conduct in the future."

27

28

1  PPG Inds., 20 Cal. 4th at 317 (internal citations
2  omitted).

3

4      Here, California has a clear interest in applying
5  these principles to culpable conduct within its borders.
6  See Stonewall, 14 Cal. App. 4th at 649 ("California's
7  paramount interest is in protecting its residents by
8  deterring tortfeasors.").  California's interest in
9  punishing wrongdoers and deterring malicious conduct
10  within its own borders is not diminished by the fact
11  that the Policy was obtained in Arizona and involves
12  non-California entities.

13

14      The Lebsacks' argument that California "has
15  absolutely no interest in denying or limiting the tort
16  recovery of one of its citizens against a non-California
17  citizen," (Lebsacks' Opp'n at 11:25-26), is not well-
18  taken.  This argument misapprehends both the nature of
19  the policy behind California's rule against indemnity of
20  punitive damage awards and the purpose of punitive
21  damages.  The guiding policy behind the rule against
22  indemnification is to punish wrongdoers and deter
23  malicious conduct, not to maximize the chances of
24  recovery of punitive damages for victims.  Moreover, the
25  purpose of punitive damages is not to compensate
26  victims.  Any compensatory damages awarded to the
27  Lebsacks in the Underlying Action will be unaffected by
28

the outcome of this action.  Plaintiff's duty to
indemnify the Candelaria Defendants for any compensatory
damage award is not at issue here.

Arizona likewise has an interest in having its laws
applied to this dispute.  The Arizona Supreme Court,
while acknowledging the concerns of states, like
California, that prohibit insurers from indemnifying
insureds for punitive damage awards, has discounted
these concerns.  In Price, the Arizona Supreme Court
held that Arizona's countervailing public policy "that
an insurance company which admittedly took a premium for
covering all liability for damages, should honor its
obligation" took precedence over public policy concerns
favoring prohibition of indemnification.  See Price, 502
P.2d at 524.  Arizona thus has an interest in ensuring
that insurers operating within its borders honor their
contractual obligations to Arizona citizens, including
Arizona businesses.  Arizona's interest conflicts with
California's.

### iii.    California's Interest Would Be More Impaired If Its Interest Were Not Applied

In Stonewall, the California Court of Appeal was
confronted with a similar conflict between California's
law prohibiting indemnification of punitive damage

awards and Wisconsin law, which allowed such
indemnification for policy reasons substantially similar
to those of Arizona.  <u>Stonewall</u>, 14 Cal. App. 4th at
642-645.  The <u>Stonewall</u> court recognized "California's
paramount interest . . . in protecting its residents by
deterring tortfeasors," and that because "the liability
imposed grew out of severe injury suffered by a
California resident while he was in California and [was]
caused by manufacturing and marketing activities which
occurred exclusively in this state[,] [i]t is difficult
to imagine circumstances where California would have a
greater interest in altering the future behavior of a
defendant by compelling payment directly from the
defendant rather than its insurers."  <u>Id.</u> at 649.
California has a great interest in ensuring that
wrongdoers bear the full brunt of any punitive damage
award.

    This interest would be frustrated here by
application of Arizona law.  Assuming the Underlying
Action results eventually in a punitive damage award,
application of Arizona law would likely impair
California's interest by permitting a wrongdoer to shift
the burden of his punishment onto a third party.  <u>See</u>
<u>id.</u> at 649 ("[F]ailure to apply California's rule would
severely impair California's interests.").  California's

twin interests in punishment and deterrence would be entirely frustrated.

Furthermore, application of foreign law in situations such as this would create a class of persons — those who travel to California from states that allow for indemnification of punitive damages — whom California is unable to punish for or deter from malicious conduct, even though such conduct occurs within California's borders.  This would represent a serious impairment of California's interest.

By contrast, though Arizona does have an interest in seeing that insurers operating within its borders honor their obligations, that interest is somewhat diminished when the insured chooses to operate outside of Arizona. It should come as no surprise to insureds who choose to operate outside of Arizona that they may be subject to the laws of states other than Arizona.  Moreover, Arizona's interests would not be as severely impaired by application of California law as California's would by application of Arizona's, because it would have no effect whatsoever on matters wholly internal to Arizona.

Applying these factors, California's interest in application of its law is more significant, and is more

23

1  likely to be impaired by application of Arizona law than

2  vice versa.

3

4                        **IV. CONCLUSION**

5      As discussed above, California law applies to this

6  dispute and prohibits insurers from indemnifying

7  insureds for punitive damage awards.  Accordingly,

8  Plaintiff is prohibited from indemnifying the Candelaria

9  Defendants for any punitive damage award arising out of

10 the Underlying Action.  The Court GRANTS Plaintiff's

11 motion for summary judgment.  For the reasons discussed

12 above, the Court DENIES the Candelaria Defendants'

13 motion to transfer.[7]

14

15

16 Dated: <u>March 31, 2010</u>                      _____

17                                   VIRGINIA A. PHILLIPS
                                    United States District Judge
18

19

20

21

22

23

24  _____

25      [7]The Candelaria Defendants appear to seek to have
    their Opposition also serve as their own summary judgment
    motion.  (<u>See</u> Candelaria Defs.' Opp'n at 15:5-7.)  In so
26  doing, the Candelaria Defendants fail to comply with a
    number of Local Rules of this Court, including that all
27  motions shall be presented by written notice of motion.
    Local. R. 6-1, 7-4.  Accordingly, this "motion" is
28  DENIED.

                                 24